# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                            Case No. 07-CR-138

**ROBERT DAVIS**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Robert Davis pleaded guilty to possession with intent to distribute more than 500 grams of cocaine, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and I set the case for sentencing. In imposing sentence, I follow a three-step procedure: (1) calculate the advisory sentencing guideline range; (2) determine whether to grant any departures pursuant to the Sentencing Commission's policy statements; and (3) select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Cull, 446 F. Supp. 2d 961, 962 (E.D. Wis. 2006).

## I. GUIDELINES

Defendant's pre-sentence report ("PSR") recommended an offense level of 29 (base level 32, U.S.S.G. § 2D1.1(c)(4), minus 3 for acceptance of responsibility, § 3E1.1) and a criminal history category of IV, which produced an imprisonment range of 121-151 months. I found these calculations correct and adopted them.

## II. DEPARTURE

The government moved for a downward departure to reward defendant for his substantial assistance under U.S.S.G. § 5K1.1. In ruling on such a motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n.3, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

In the present case, the government indicated that shortly after his arrest, defendant began cooperating, providing historical information about his cocaine supplier, Eladio Cruz. He then made a series of recorded phone calls to Cruz, introducing Cruz to and vouching for an undercover officer, who ultimately purchased six ounces of cocaine from Cruz for $4000. Agents arrested Cruz after the transaction and searched his residence, recovering nine ounces of cocaine and $15,000 in drug proceeds. The government later charged Cruz with conspiring to distribute more than five kilograms of cocaine. The government sought a 3 level reduction based on this assistance.

I awarded 2 levels under the first § 5K1.1 factor, because defendant's assistance was

2

significant and useful in directly leading to the arrest of Cruz and the seizure of drugs and money. I awarded 1 level under the second factor because it appeared that defendant's information was truthful, but I had no evidence as to whether it had been relied upon (by judges or juries, for instance) or as to its completeness. I awarded 1 level under the third factor because defendant's cooperation was limited to providing information and making phone calls; he did not engage in other pro-active cooperation (making buys or wearing a wire, for example). I awarded no reduction under the fourth factor, as there was no evidence of particular danger or risk. Finally, I awarded 1 level under the fifth factor since it appeared that defendant decided to cooperate shortly after his arrest, although there was no evidence that the timing was otherwise significant. Therefore, I granted a total reduction of 5 levels, making the range 77-96 months.

### III. SENTENCE

**A.     Section 3553(a) Factors**

In imposing the ultimate sentence, the district court must consider all of the factors set forth in 18 U.S.C. § 3553(a), United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008), including:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

3

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. In determining a sufficient sentence, the district court may not presume that the guideline sentence is the correct one. United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006), cert. denied, 127 S. Ct. 3055 (2007). Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.  Analysis**

**1.  Nature of Offense**

Defendant supplied cocaine to a government informant for several months, and on March 7, 2007, agents arrested him in possession of two kilograms. The amounts involved in this case were fairly significant, but the offense was not otherwise aggravated by violence, weapon possession or threats, and defendant was cooperative on his arrest and after.

4

### 2. Character of Defendant

Defendant was thirty-seven years old and had a very serious record. In 1990, he was convicted of second degree intentional homicide arising out of an incident in which he shot and killed another man during an argument. In 1993, he was convicted of third degree sexual assault, which was amended from the original charges of first and second degree sexual assault. It was only by virtue of the amendment in that case, which eliminated the use or threat of force element, that defendant did not find himself classified a career offender under the guidelines.

Both of these offenses occurred when defendant was very young, eighteen and nineteen years old, and the homicide case appeared to be one of imperfect self-defense, i.e. a subjective belief that he needed to defend himself but not one justified by the law. Further, there were some positives since then. He did well in prison, completing programming, leading to his parole in 2002. He initially did quite well on parole, working steadily until an injury suffered in a car accident caused him to lose his job in 2005. Things seemed to go downhill from there: he submitted two positive drug tests in late '06 and early '07, and he was arrested for the instant offense in March 2007, which led to revocation of his parole and imposition of a 6 ½ year sentence in June 2007.

Defendant's childhood was difficult. His father, who also had a homicide conviction, was not involved in his life. When defendant was 14, his mother was convicted of the attempted murder of his step-father, which caused his placement in various other homes and had a substantial impact on him. Defendant's sister indicated that defendant started getting in trouble after their mother went to prison, but that he seemed to be a different person when he got out of prison in 2002.

5

Defendant married in 1990 while incarcerated, but his wife died in 1994. In a previous PSR, defendant's first wife described him as kind, gentle and non-violent. Defendant was in a relationship for two years prior to his arrest in this case, and his girlfriend indicated that defendant was good with her three children and was raising his own child, age two, from a previous relationship. As I alluded to above, defendant made efforts to further his education in prison after dropping out of high school, and he worked at Goodwill from October 2002 to January 2005, when he lost his job after being hurt in an accident. He stated that he started selling drugs because he needed income after losing his job.

### 3. Purposes of Sentencing

Cocaine trafficking is a serious crime, which required me to impose a substantial prison sentence to provide just punishment. However, there was no suggestion of violence, and it appeared that defendant turned to dealing only after he lost his legitimate job and burned through his savings. Defendant's record was also serious, but I considered the fact that defendant was a teenager when he committed the prior offenses, and that he seemed to be doing much better during his state prison term and for about three years after his release. He furthered his education and steadily worked, making a positive contribution to the community. Thus, while he presented some risk of recidivism, I found that defendant had the potential to make it in society; he showed as much from 2002 to 2005. I saw no significant correctional treatment needs, aside from perhaps substance abuse testing and treatment.

### 4. Guidelines

The guidelines called for a term of 77-96 months after the departure. Under all of the circumstances, I found a sentence slightly below that range sufficient but not greater than

6

necessary. I wanted to acknowledge some of the good defendant had done over the past few years, obtaining his HSED, working, caring for his child and staying out of trouble. For someone in defendant's situation, who went into prison a teen-aged high school drop out with no skills and little family support, to come back out at age thirty-two and re-integrate as well as he did was something worthy of consideration under §§ 3553(a)(1) and 3553(a)(2)(B) & (C).

## IV. CONCLUSION

Under all of the circumstances, I found a sentence of 72 months sufficient but not greater than necessary. This sentence varied just slightly from the guidelines – less than 1 level after the 5K1.1 motion – and was based on the particular facts of the case, so it did not create unwarranted disparity.

The guidelines recommended that I run the sentence consecutively to the revocation sentence defendant was serving, but for many of the same reasons stated, that would have resulted in a total punishment greater than necessary. As indicated, defendant did quite well on parole until 2006 when he involved himself with drugs. The state sentence had a maximum discharge date of October 2013, but he was at the time I sentenced him parole eligible; thus, he would almost certainly be released from that sentence before 2013. However, even if he served the state sentence out he would receive a reasonable incremental punishment for the instant offense.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 72 months to run concurrently with the sentence in State of Wisconsin Case No. F-890072. I recommended that the BOP implement this directive by designating the state facility as the place of federal confinement. Upon his release, I ordered defendant to serve four years of supervised release, the conditions of which appear in the judgment.

7

Dated at Milwaukee, Wisconsin, this 7th day of March, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge